(C. D. 333)

HARTLEY STOCK FARM *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 9, 1940)

*Fryberger, Fulton & Boyle* for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: In this action the plaintiff seeks to recover duties assessed on three Clydesdale mares imported at the port of Noyes, Minn. The collector assessed duty thereon at 20 per centum ad valorem under paragraph 714 of the Tariff Act of 1930. The plaintiff claims that the assessment is illegal for the reason that the mares are entitled to free entry under the provisions of paragraph 1606 as animals imported specially for breeding purposes.

At the trial counsel for both parties entered into the following stipulation which is part of the record herein:

That the Plaintiff above named entered at the port of Noyes, Minnesota, on January 10, 1937, three pure-bred Clydesdale horses (female) by Entry No. 0626A, free of duty under Paragraph 1606 of the Tariff Act of 1930.

That said horses were imported for breeding purposes and the pedigrees thereof were immediately sent to the Department of Agriculture with requests for certificates of record and pedigree. That the same were not issued by the Department of Agriculture until August 4, 1937, and were then filed with said Collector on August 10, 1937. That in the meanwhile, and on July 21, 1937, the six months time entry bond filed by the Plaintiff having expired on July 10, 1937, and not having been extended, said entry was tentatively liquidated and said Collector assessed duty at the rate of twenty per centum ad valorem under Paragraph 714 of said Act.

That the reason plaintiff allowed said bond to expire on July 10, 1937, without securing an extension thereof, was due to the fact that plaintiff, having received no notice to the contrary, was of the opinion that said certificates of pure-breeding had already been forwarded by the Department of Agriculture to the Collector of Customs.

That said entry was finally liquidated on September 28, 1937, and the protest herein was thereupon filed within sixty days thereafter, and is timely.

IT IS FURTHER STIPULATED, that the protest herein may be submitted upon the above stipulation and that the plaintiff may have sixty days from the date hereof to serve and file its brief, and that the defendant may have thirty days thereafter to reply thereto.

The plaintiff in argument contends, and we summarize the language of counsel: that he should be excused from absolute compliance with the regulations inasmuch as the matter was taken completely out of his control by the Bureau of Animal Industry of the Department of Agriculture and the collector of customs, and that he was not negligent in failing to renew his bond for another 6 months as he was not informed of the inability of the Department to clear his importation within the 6-months' period and consequently it is unjust to penalize him for not doing something which the Departments have undertaken to do to the exclusion of his further cooperation and in the absence of any notice to him.

The Government contends that strict compliance with the regulations as to the importation of purebred animals is a condition precedent to liquidation without payment of duty. The paragraph of the statute in question, insofar as applicable, provides as follows:

PAR. 1606. (a) Any animal imported by a citizen of the United States specially for breeding purposes, shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes, except black or silver foxes: *Provided*, That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed: *Provided further*, That the certificate of such record and pedigree of such animal shall be produced and submitted to the Department of Agriculture, duly authenticated by the proper custodian of such book of record, together with an affidavit of the owner, agent, or importer that the animal imported is the identical animal described in said certificate of record and pedigree. The Secretary of Agriculture may prescribe such regulations as may be required for determining the purity of breeding and the identity of such animal: *And provided further*, That the collectors of customs shall require a certificate from the Department of Agriculture stating that such animal is pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed.

(b) The Secretary of the Treasury may prescribe such additional regulations as may be required for the strict enforcement of this provision.

   *       *       *       *       *       *       *

It will be noted that the privilege of exemption from duty provided by the above paragraph 1606 is that free entry of animals shall be permitted when the same are purebred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agricul-

ture for that breed. That the certificate of such record and pedigree shall be produced and submitted to the Department of Agriculture duly authenticated by the proper custodian of such book of record together with an affidavit of the owner, agent, or importer, that the animal imported is the identical animal described in said certificate of record and pedigree. It is further provided that the Secretary of Agriculture is empowered to provide such regulations as may be required for determining the purity of breeding and the identity of such animals; that the collectors of customs shall require a certificate from the Department of Agriculture to the effect that the animal is purebred, duly registered in a book of record recognized by the Secretary of Agriculture as authentic, and that the Secretary of the Treasury is empowered to prescribe such additional regulations as may be required for the strict enforcement of the provisions for the exemption of duty.

It is prescribed in the Customs Regulations of 1931 in force at the time of entry (see article 471) that a bond may be given by the importer for the production within 6 months of the certificate of pure breeding and that such bond will be canceled only upon the production of the required evidence or upon the payment of duties.

We are convinced, and we do not believe that it is disputed on the part of the Government, that plaintiff has complied with the provisions of the statute and the regulations at the time of entry of the animals here in question.

It is agreed, however, in the stipulation that the certificate of record and pedigree required to be filed with the collector by the Department of Agriculture were not issued by that Department until August 4, 1937, and were not filed with the collector until August 10, 1937, and further, that the entry was finally liquidated on September 28, 1937, and the entry bond filed by plaintiff expired July 10, 1937, without having been extended.

From the foregoing it will be seen that the controversy arising here involves the question whether the exemption of the statute shall be so strictly construed as to preclude the entry of purebred animals under such provision when the Department has so delayed filing with the collector the certificate of pure breeding after the time the bond filed for its production had expired, although prior to the final liquidation of the entry.

Our courts have held that statutes which extend a special privilege to the citizen should be strictly construed in favor of the Government. See *Swan & Finch Co.* v. *United States*, 190 U. S. 143; *Hannibal, etc. Railroad Co.* v. *Packet Co.*, 125 U. S. 260.

This court, in the case of *Spencer & Borden* v. *United States*, G. A. 4615, T. D. 21859, has held that proof in accordance with the regulations is essential to establish the pedigree of purebred animals imported

for breeding purposes and must be filed with the collector prior to liquidation of the entry by that officer.

The foregoing cases have been cited by the Government as sustaining its claim for strict compliance with the statute in exemption cases.

It will be noted, however, in the foregoing case, as well as the others which have been cited here, either some portion of the required evidence was not submitted and there was a refusal of the Secretary of Agriculture to issue the required certificate of pure breeding, or for some other reason the certificate of pure breeding was not received by the collector until after the entry had been liquidated as dutiable. See *Wakem & McLaughlin* v. *United States*, Abstract 40845; *Hempstead* v. *United States*, G. A. 4815, T. D. 22636; *Todd* v. *United States*, Abstract 30669; *Clark* v. *United States*, G. A. 8255, T. D. 38011; and *Turcotte* v. *United States*, Abstract 19049.

The Government stresses for our attention the case of *Sullivan* v. *United States*, T. D. 47359, where the importer forwarded to the Department of Agriculture the required documents to obtain the certificate of pure breeding and the Department refused to issue a certificate because no inspection report had been made at the port of New York in compliance with the regulations of the Secretary of Agriculture. However, in the *Sullivan* case it may be noted that the certificate of pure breeding was never furnished to the collector.

In the case presented here, all of the requirements attending the exemption were strictly complied with by the importer so far as it was within his power to do so. The only condition lacking was the issuance of the certificate of pure breeding by the Secretary of Agriculture which was to be forwarded not by the importer but by the Secretary of Agriculture direct to the collector of customs. This certificate was received by the collector from the Department of Agriculture but the collector disregarded the same and liquidated the entry as dutiable on September 28, 1937, after the same had been filed with him.

Article 471 of the Customs Regulations of 1931 provides as follows:

(a) A bond on customs Form 7551 or 7553 may be given by the importer for the production within six months of the required affidavit, if it can not be filed at the time of entry, and a certificate of pure breeding, provided the certificates of pedigree and evidence of transfer of ownership were furnished in accordance with paragraph (c) of the preceding article.

(b) Such bond will be canceled only upon the production of the required evidence or on payment of duties.

It will be noted that paragraph 1606 provides that the Department of Agriculture shall file with the collector of customs a certificate stating that such animal is purebred, etc. The regulations authorized by the statute, however, provide that the importers give a bond for the production within 6 months of said certificate of pure breeding. While

the bond is not before us, we presume it is Form 7553, the ordinary bond to produce documents. The usual provisions of such bonds are to the effect that if the principal shall deliver the certificates, or, in the event of failure to deliver, pay to said collector the amount thereof as liquidated damages, the obligation under the bond shall be void. Otherwise it will remain in full force and effect.

Thus the importer is required under the regulations to perform a condition that the statute removes from his control. Under such circumstances, we are of the opinion that the regulation providing that a bond be given for the production of a certificate, the production of which is made by statute the obligation of a Government official rather than that of the importer, is unreasonable in that it places the power in the hands of such official to defeat the purposes of the statute.

The privilege of exemption depends upon the submission of proof of pure breeding. This proof was in the hands of the collector before liquidation and cancelation of the bond for its production.

Under the terms of the statute and regulations, we are of the opinion that where proof is produced before liquidation the collector should not totally disregard the same and demand the payment of duty upon animals clearly entitled to exemption from duty, particularly when the record proof lacking is to be supplied by the Department of Agriculture. If this were not true, through inefficiency or disregard of the importer's rights, the Department of Agriculture might easily defeat the privilege granted by Congress, arbitrarily, and without due cause.

For the reasons stated it is held that, the record proof required for exemption from duty having been presented to the collector prior to liquidation, the purebred animals in question are properly classifiable under the provisions of paragraph 1606, Tariff Act of 1930, as exempt from duty.

Judgment will therefore be entered in favor of the plaintiff, directing the collector to reliquidate the entry and to make refund of all duty taken.